IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-337-D

| | | |
|---|---|---|
| CRYSTAL GAIL MANGUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| OXYGEN MEDIA, LLC, | ) | |
| and JENNIFER GEISSER, | ) | |
| | ) | |
| Defendants. | ) | |

On August 23, 2021, Crystal Gail Mangum ("Mangum" or "plaintiff") filed a pro se "libel and defamation" action against Oxygen Media, LLC and Jennifer Geisser [D.E. 1]. On September 27, 2021, Mangum dismissed Geisser as a defendant [D.E. 7]. On October 18, 2021, Oxygen Media, LLC ("Oxygen Media" or "defendant") moved to dismiss Mangum's complaint pursuant to Rules 7, 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 13] and filed a memorandum in support [D.E. 14]. On November 8, 2021, Mangum responded in opposition [D.E. 16] and moved for summary judgment [D.E. 17]. On November 19, 2021, Oxygen Media replied in support of its motion to dismiss [D.E. 18]. On November 24, 2021, Mangum requested a hearing concerning her motion for summary judgment [D.E. 19]. Oxygen Media opposes a hearing and responded in opposition to Mangum's motion for summary judgment [D.E. 20]. On December 20, 2021, Mangum replied [D.E. 23].

On December 16, 2021, Sidney B. Harr ("Harr"), a self-styled "lay advocate" acting on Mangum's behalf, mailed a letter to the court asking for a federal magistrate judge [D.E. 24]. On December 22, 2021, Harr mailed a second letter to the court reiterating this request [D.E. 25]. On January 12, 2022, Harr mailed a third letter to the court reiterating his request for a federal magistrate judge to resolve Mangum's case and hinting that I should recuse from this case because of my

connections to Duke University School of Law [D.E. 26].¹ On January 27, 2022, Harr mailed a fourth letter to the court asserting Mangum has a "right" to have a federal magistrate judge decide her case and suggesting I have a conflict of interest that warrants recusal [D.E. 27].

On April 20, 2022, Mangum moved for a mediated settlement conference [D.E. 28]. On May 5, 2022, Oxygen Media responded in opposition [D.E. 29]. As explained below, the court grants Oxygen Media's motion to dismiss and dismisses the complaint with prejudice for failure to state a claim upon which relief can be granted. The court rejects Harr's assertions that Mangum has a right to have a federal magistrate judge resolve her case and rejects Harr's recusal arguments.

I.

On April 3, 2011, Mangum stabbed her boyfriend Reginald Daye ("Daye"). See State v. Mangum, 242 N.C. App. 202, 203, 773 S.E.2d 555, 558, disc. review denied, 368 N.C. 601, 780 S.E.2d 564 (2015). "Daye died a few days later due to complications from the stab wound." Id., 773 S.E.2d at 558. On November 22, 2013, a jury in Durham County Superior Court convicted Mangum of second-degree murder in connection with Daye's death. See id. at 206, 773 S.E.2d at 558–59. The trial court sentenced Mangum to a minimum term of 170 months' imprisonment and a maximum term of 216 months' imprisonment. See id. at 206, 773 S.E.2d at 559. On July 7, 2015, the North Carolina Court of Appeals affirmed Mangum's conviction and sentence. See id. at 203, 773 S.E.2d at 557. Mangum remains in state prison. See Compl. [D.E. 1] ¶ 6.

Mangum alleges that Oxygen Media defamed her on October 7, 2018, when it published on its online site "Murders A–Z" an article titled "Former Exotic Dancer Who Accused Duke Lacrosse Players of Sexual Assault Fatally Stabs Boyfriend." Id. ¶ 28; [D.E. 1-2] (copy of article). According to Mangum, the word "fatally" is inaccurate and defamatory. See Compl. ¶ 29. Mangum continues to deny that Daye died because she stabbed him. See id. ¶¶ 30–76.

---

¹ The Clerk of Court shall unseal [D.E. 26] and [D.E. 27].

Oxygen Media argues North Carolina's one-year statute of limitations for defamation claims bars Mangum's lawsuit. See [D.E. 14] 8; N.C. Gen. Stat. § 1-54(3). Mangum's defamation claim accrued on the "date of the publication" of the alleged defamatory words (i.e., October 7, 2018). Merritt, Flebotte, Wilson, Webb, & Caruso, PLLC v. Hemmings, 196 N.C. App. 600, 611, 676 S.E.2d 79, 87 (2009) (quotation omitted); see Gibson v. Mut. Life Ins. Co., 121 N.C. App. 284, 287, 465 S.E.2d 56, 58 (1996); see also Johnson v. City of Raleigh, No. 5:12-CV-210-BO, 2013 U.S. Dist. LEXIS 93947, at *19–21 (E.D.N.C. Mar. 29, 2013) (unpublished); Martin v. Boyce, 217 F.R.D. 368, 371–72 (M.D.N.C. 2003). Under North Carolina law, Mangum had to file her defamation action within one year of the publication date. See N.C. Gen. Stat. § 1-54(3). Mangum, however, waited until August 23, 2021, to sue for defamation. Thus, North Carolina's one-year statute of limitations bars Mangum's action, and the court grants Oxygen Media's motion to dismiss Mangum's complaint for failure to state a claim.

II.

The court next addresses Harr's letters to the court on Mangum's behalf. Harr asserts that Mangum has a right to have a federal magistrate judge resolve her case, and he suggests that my connections to Duke University School of Law warrant my recusal.

A.

The court begins by summarizing Harr's litigation efforts in the state and federal courts of North Carolina. Sidney Harr is a self-described "lay advocate" and Mangum's fiancé. He is not, and has never been, an attorney licensed to practice in the State of North Carolina or before this court. See [D.E. 21-1] 3. During Mangum's murder case, Harr prepared or assisted in preparing several motions, pleadings, and evidentiary exhibits on Mangum's behalf. See id. at 3–4. He sent letters to the judge in Durham County Superior Court presiding over Mangum's case urging the judge to dismiss the charges against Mangum. See id. at 4. Harr also filed a petition for a writ of mandamus on Mangum's behalf. See id.

In light of Harr's behavior, the North Carolina State Bar sued Harr for the unauthorized practice of law in violation of N.C. Gen. Stat. § 84-4. On February 18, 2013, the Wake County Superior Court found that Harr violated section 84-4 by providing unlicensed legal assistance to Mangum during her prosecution for murder. See id. at 2, 4–6. The Wake County Superior Court permanently enjoined Harr from the practice of law in North Carolina, including enjoining him from "providing any legal services or giving legal advice or counsel to any other person, firm, or corporation, including but not limited to preparation of or filing any court pleadings for or on behalf of others or advising others, specifically including Crystal Mangum." Id. at 5.

Harr has a long history of pro se litigation stemming from his "advocacy" for Mangum and disbarred former prosecutor Michael Nifong. In 2011, Harr filed a lawsuit under 42 U.S.C. § 1983 against Duke University, its president, and its law school dean after Harr was asked to leave Duke University's campus for soliciting attendees of an event with business cards advertising his organization called the "Committee on Justice for Mike Nifong." See Harr v. Brodhead, No. 1:11CV263, 2012 WL 719953, at *1–2 (M.D.N.C. Mar. 5, 2012) (unpublished). After a federal magistrate judge recommended the court dismiss Harr's claims, Harr objected and took "the extraordinary tact of repeatedly maligning the motivations and personal integrity of the United States Magistrate Judge." Id. at *1. The United States District Court for the Middle District of North Carolina conducted a de novo review, overruled Harr's objections, and adopted the magistrate judge's recommendation to dismiss Harr's complaint. See id. at *3. According to the court, Harr's "abusive conduct" during the case, including his "gratuitous and vile invective" toward the court, demeaned "the time honored notion that the law and the courts of the United States are important parts of American society worthy of respect." Id. (quoting Theriault v. Silber, 579 F.2d 302, 303 (5th Cir. 1978) (per curiam)). The United States Court of Appeals for the Fourth Circuit affirmed the court's judgment. See Harr v. Brodhead, 475 F. App'x 15 (4th Cir. 2012) (per curiam) (unpublished).

4

Harr then filed two other frivolous lawsuits in the Middle District of North Carolina making the same claims. The court summarized Harr's lawsuits, stating: "Mr. Harr has filed three lawsuits against the Duke Defendants, at least two of which were repetitive and frivolous. He has filed numerous briefs and pleadings full of irrelevant material and devoid of any reasonable legal argument. He has attacked the integrity of the judges in this district without offering any evidence beyond his own opinion." Harr v. Brodhead, No. 1:16-CV-304, 2016 WL 8653494, at *3 (M.D.N.C. June 30, 2016) (unpublished). In light of these abuses, the court imposed sanctions, including dismissing one of Harr's complaints, fining him $1,000, and issuing a pre-filing injunction against him for any claim related to the defendants and issues litigated in those three cases. See id. at *4. The Fourth Circuit affirmed. See Harr v. Brodhead, 672 F. App'x 252, 252–53 (4th Cir. 2016) (per curiam) (unpublished).

While Harr's litigation in the Middle District of North Carolina was pending, Harr notified WRAL and other news outlets about his cases. See Compl. ¶ 65, Harr v. WRAL-5 News, No. 5:20-cv-00362-M (E.D.N.C. Jan. 14, 2021), [D.E. 1]. No news outlets covered the story. See id. After the Middle District of North Carolina rejected Harr's claims and imposed sanctions, WRAL ran a story regarding Harr's lawsuits and the sanctions against him entitled, "Court chastises supporter of Duke Lacrosse accuser." WRAL, Court Chastises Supporter of Duke Lacrosse Accuser (updated Nov. 5, 2018), https://www.wral.com/court-chastises-supporter-of-duke-lacrosse-accuser/15828115/ (last visited May 11, 2022). Harr twice sued WRAL in state court in response to the article, and the Wake County Superior Court dismissed both complaints. See Compl. ¶¶ 124–61, WRAL-5 News, No. 5:20-cv-00362-M, [D.E. 1]. On July 9, 2020, Harr sued WRAL in this court in an attempt to obtain federal review of the state court rulings.[2] On January 14, 2021, the court dismissed his

---

[2] Harr's July 2020 complaint was his second attempt to sue WRAL in this court over the article. The court dismissed without prejudice his first attempt for failure to make proof of service. See Compl., Orders, & J., Harr v. WRAL-5 News, No. 5:17-CV-1-FL (E.D.N.C. 2017), [D.E. 1, 21,

5

complaint. See Harr v. WRAL-5 News, No. 5:20-cv-00362-M, 2021 WL 141697, at *1–3 (E.D.N.C. Jan. 14, 2021) (unpublished). The Fourth Circuit affirmed. See Harr v. WRAL-5 News, 853 F. App'x 859 (4th Cir. July 22, 2021) (per curiam) (unpublished).

Toward the conclusion of his litigation in the Middle District of North Carolina, Harr filed suit in this court against the Wake County District Attorney seeking a judgment overturning Mangum's second-degree murder conviction or in the alternative a new trial for Mangum. On August 15, 2016, the court dismissed Harr's claims based on prosecutorial immunity and for lack of standing and lack of third-party standing to sue on Mangum's behalf. See Harr v. Freeman, No. 5:16-CV-199-FL, 2016 WL 4287962, at *1–5 (E.D.N.C. Aug. 5, 2016) (unpublished). The Fourth Circuit affirmed. See Harr v. Freeman, 671 F. App'x 185, 185–86 (4th Cir. 2016) (per curiam) (unpublished).

Harr is providing legal advice and assistance to Mangum in this lawsuit. Mangum's response to Oxygen Media's motion to dismiss states in the opening paragraph that Mangum filed the response "through assistance of her lay advocate and fiancé Sidney B. Harr." [D.E. 16] 1. Mangum's motion for summary judgment begins with a similar tribute, stating she filed her motion "through assistance of her lay advocate and fiancé Sidney B. Harr." [D.E. 17] 1. Mangum's motion for a hearing contains identical language in the first paragraph. See [D.E. 19] 1. The same is true of Mangum's reply to Oxygen Media's response in opposition to Mangum's motion for summary judgment, see [D.E. 23] 1, and Mangum's motion for a mediated settlement conference. See [D.E. 28] 1. Harr also has sent numerous letters to the court regarding whether a federal magistrate judge will resolve Mangum's case and alleging that my connections to Duke Law School warrant my recusal. See [D.E. 24, 25, 26, 27].

---

24, 26, 28].

Case 5:21-cv-00337-D   Document 30   Filed 05/17/22   Page 6 of 11

Local Civil Rule 83.1 states that to be eligible to practice before this court, a person must be "[a] member in good standing of the bar of the Supreme Court of North Carolina." Local Civil Rule 83.1(b); see In re Frazier, 63 F. App'x 659, 660 (4th Cir. 2003) (per curiam) (unpublished). Harr is not a member of the bar of this court or a member in good standing of the bar of the Supreme Court of North Carolina. Thus, his legal assistance to Mangum is improper, and his preparation of or assistance to Mangum in preparing at least five filings in this case, including three motions and two response briefs, appears to flagrantly violate the Wake County Superior Court's February 18, 2013 order enjoining Harr from practicing law.[3] At a minimum, Harr's years-long history of baseless federal litigation, his repeated refusals to heed court warnings, and his improper, unauthorized legal assistance to Mangum in this case in seeming violation of an injunction against doing so shows Harr's deep-seated disrespect for the law and the judicial system.[4] The court is deeply concerned about Harr's inappropriate intrusions into this lawsuit. Nonetheless, the court addresses the issues Harr presents in his letters to the court.

B.

Harr first argues that Mangum is entitled to have a federal magistrate judge resolve her case. See [D.E. 24] 1; [D.E. 25] 1–2; [D.E. 26] 2; [D.E. 27] 1–2. Not surprisingly, Harr cites no authority to support this assertion. "There is no constitutional right to have a magistrate appointed . . . ." Good v. Allain, 823 F.2d 64, 66 (5th Cir. 1987) (per curiam). Moreover, the permissive language in the Federal Magistrates Act, 28 U.S.C. §§ 631, et seq., signals the discretion district judges have in referring and assigning matters to magistrate judges. Cf. Gonzalez v. United States, 553 U.S. 242,

---

[3] The Clerk of Court shall send a copy of this order to the Honorable Paul Ridgeway, the Senior Resident Superior Court Judge in Wake County Superior Court for any further proceedings in that court.

[4] To the extent Oxygen Media seeks sanctions or a show-cause order against Harr for his conduct in this case, see [D.E. 29] 2–3, the court denies the request without prejudice to Oxygen Media seeking further relief if Harr continues his involvement in this case.

7

245 (2008). For example, 28 U.S.C. § 636(b)(1)(A) begins with the phrase "a judge may designate a magistrate judge" to preside over certain proceedings. See 28 U.S.C. § 636(b)(1)(A) (emphasis added). Section 636(b)(1)(B) contains similar language. See id. § 636(b)(1)(B). Alternatively, Harr suggests that a magistrate judge should supervise my work in this case. See [D.E. 27] 2 ("Even if Judge Dever was to hear this case, it would be imperative that the process was closely followed. That is not possible with the omission of magistrate involvement."). Harr's argument inverts the structure of the federal court system. See United States v. Cannon, 711 F. Supp. 2d 602, 608 (E.D. Va. 2010). Thus, the court rejects Harr's baseless request for a federal magistrate judge in this case.

C.

Harr suggests my connections to Duke Law School warrant my recusal. Harr specifically cites that I graduated from Duke Law School in 1987, was editor-in-chief of the Duke Law Journal as a student, currently teach courses there, and am on the law school's board of visitors. See [D.E. 27] 1. Harr also cites Mangum's "acrimonious" relationship with Duke University after Mangum falsely accused several Duke lacrosse players of raping her. Id. Moreover, Harr and Mangum believe that Daye died because of malpractice by Duke University Hospital medical personnel, not because Mangum stabbed Daye. See [D.E. 26, 27]. Harr suggests that my connections to Duke Law School require recusal given Mangum's relationship to Duke University and his and Mangum's allegations concerning Duke University Hospital medical personnel who treated Daye.

Section 455 of Title 28 contains various grounds for federal judges' recusal and is divided into two parts. See 28 U.S.C. § 455. Section 455(a) requires a judge's recusal "in any proceeding in which his impartiality might reasonably be questioned." Id. § 455(a); see Liteky v. United States, 510 U.S. 540, 548 (1994). Section 455(b) addresses specific scenarios where recusal is required. Id. § 455(b). Section 455(b)(1) requires recusal when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding."

8

Id. § 455(b)(1). Initially, the court analyzes the applicability of section 455(b)(1) and then analyzes the applicability of section 455(a).

Section 455(b)(1) mandates recusal when a judge has personal bias toward a party or personal knowledge of disputed evidentiary facts concerning the proceedings. See 28 U.S.C. § 455(b)(1); see, e.g., In re Moore, 955 F.3d 384, 387–89 (4th Cir. 2020). Neither Duke University Hospital nor any current or former Duke University Hospital medical personnel are parties to this case. And my connections to Duke Law School have no relationship to Mangum and Oxygen Media, the actual parties in this lawsuit. Moreover, I have no personal knowledge of the care Daye received at Duke University Hospital after Mangum stabbed him. Accordingly, section 455(b)(1) does not require me to recuse in this case.

Section 455(a) states that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Id. § 455(a); see Belue v. Levanthal, 640 F.3d 567, 572 (4th Cir. 2011). A court must evaluate a recusal motion under section 455(a) on an objective basis. See Microsoft Corp. v. United States, 530 U.S. 1301, 1302 (2000) (Rehnquist, C.J.); Liteky, 510 U.S. at 548. "The objective analysis does not focus on the reality of a judge's actual state of mind, purity of heart, incorruptibility, or impartiality." United States v. Black, 490 F. Supp. 2d 630, 656 (E.D.N.C. 2007); see Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858–61 (1988). "Rather, the focus is on perception (i.e., appearance): whether sufficient factual grounds exist to cause an objective observer reasonably to question the judge's impartiality." Black, 490 F. Supp. 2d at 656; see, e.g., Liteky, 510 U.S. at 548–51. "[T]he bias or prejudice must result in an opinion on the merits of a case on some basis other than what the judge learned from his participation in the case." Belue, 640 F.3d at 572–73 (cleaned up); see Liteky, 510 U.S. at 545 n.1.

A judge need not recuse "because of unsupported, irrational, or highly tenuous speculation." United States v. DeTemple, 162 F.3d 279, 287 (4th Cir. 1998) (quotation omitted); see In re United States, 666 F.2d 690, 694 (1st Cir. 1981). Instead, judges apply an objective, "nuanced approach."

9

DeTemple, 162 F.2d at 287–88. The court must view the facts and circumstances from the position of a reasonable observer outside the judicial system. See id. at 287. "Judges, accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would." Id. Nonetheless, the reasonable outside observer is not "unduly suspicious or concerned about a trivial risk" of bias. Id. A unique factual situation is more likely to generate an appearance of partiality than a more common, potentially biasing circumstance. See id. "[T]he more common a potentially biasing circumstance and the less easily avoidable it seems, the less that circumstance will appear to a knowledgeable observer as a sign of partiality." Id. (quotation omitted); see In re Allied-Signal Inc., 891 F.2d 967, 971 (1st Cir. 1989) (Breyer, J.). And a "confluence of facts" can create the appearance of impartiality, "even though none of those facts, in isolation, necessitates recusal under § 455(a)." DeTemple, 162 F.3d at 287. In short, "the objective standard asks whether the judge's impartiality might be questioned by a reasonable, well-informed, observer who assesses all the facts and circumstances." United States v. Stone, 866 F.3d 219, 230 (4th Cir. 2017) (emphasis in original) (quotation omitted).

Considering all the facts and circumstances from the viewpoint of a reasonable, well-informed observer, my impartiality could not reasonably be questioned in this case. Contrary to Harr's arguments, Duke University's liability is not at issue in this case (i.e., Duke University would not be liable for any damages awarded against Oxygen Media). See [D.E. 26] 2. Duke University is not a party. Moreover, the jury in Mangum's criminal case, over which I did not preside, already decided Daye's cause of death and found, beyond a reasonable doubt, that Daye died because Mangum stabbed him. See Mangum, 242 N.C. App. at 203–06, 773 S.E.2d at 558–59; see also State v. Welch, 135 N.C. App. 499, 502–03, 521 S.E.2d 266, 268 (1999) (noting causation is an element of second-degree murder). In light of the jury's findings in Mangum's criminal case, the question in this case is whether Oxygen Media (not Duke University) defamed Mangum. Because my

10

connections to Duke Law School have no bearing on that question, a reasonable, well-informed observer could not reasonably question my impartiality in this case. Accordingly, section 455(a) does not require recusal, and I decline to recuse.

III.

In sum, the court GRANTS defendant's motion to dismiss [D.E. 13] and DISMISSES WITH PREJUDICE plaintiff's complaint. North Carolina's one-year statute of limitations bars plaintiff's defamation claim. The court DENIES as baseless plaintiff's motion for summary judgment [D.E. 17], motion for a hearing [D.E. 19], and motion for a mediated settlement conference [D.E. 28].

SO ORDERED. This 17 day of May, 2022.

JAMES C. DEVER III
United States District Judge

11